IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MARILYN S. WELDON,                    )
                                      )
                Plaintiff,            )
                                      )
                                      )  Case No. CIV-21-022-RAW-KEW
                                      )
COMMISSIONER OF THE SOCIAL            )
SECURITY ADMINISTRATION,              )
                                      )
                Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Marilyn S. Weldon (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . .” 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term “substantial evidence” has been interpreted by the United States Supreme Court to require “more than a mere scintilla. It means such relevant

---

[1]     Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments “medically equivalent” to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (“RFC”) to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 62 years old at the time of the ALJ's decision. She has a tenth-grade education and past relevant work as a substitute teacher and a hospital cook. She alleges an inability to work beginning on May 9, 2017, due to limitations resulting from nerve damage, lazy foot, diabetes, restless leg syndrome, neuropathy, arthritis in the hands, pain in her back, and numbness and pain in her legs, feet, and hands.

### Procedural History

On October 26, 2017, Claimant protectively filed an application for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Her application was denied initially and upon

3

reconsideration. On June 18, 2019, ALJ Bill Jones conducted a hearing in Fort Smith, Arkansas, at which Claimant testified. A supplemental hearing was held by telephone on April 16, 2020. On June 9, 2020, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on December 8, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) excluding proven limitations from the RFC (with various subparts), and (2) finding she could perform her past relevant work at step four of the sequential evaluation.

### RFC Determination

In his decision, the ALJ found Claimant suffered from severe impairments of diabetes mellitus with peripheral neuropathy, disorder of the back, and obesity. (Tr. 59). He determined Claimant

could perform light work, except she could only occasionally climb, balance, stoop, kneel, crouch, and/or crawl. (Tr. 60).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform her past relevant work as a hospital cook, as actually performed. (Tr. 64). As a result, he concluded Claimant had not been under a disability from May 9, 2017, through the date of the decision. (Tr. 65).

Claimant contends the ALJ's RFC assessment is not supported by substantial evidence for several reasons. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. Rul. 96-8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. He must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence

between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

Claimant first asserts her back impairment does not allow for her to perform the requirements of light work. The ALJ specifically considered the medical evidence and Claimant's testimony regarding her chronic back pain and associated symptoms. Claimant received treatment for her back pain and other conditions from her primary care physician Ahmer Hussain, M.D. The record includes multiple treatment records from Dr. Hussain dating from October of 2016 through March of 2020, which the ALJ referenced in the decision. (Tr. 61, 395-418, 464-69, 478-95, 496-519, 525-32, 548-58, 562-70, 578-98, 629-33, 661-76). He considered an MRI of Claimant's lumbar spine from April of 2019, which revealed no acute findings or canal stenosis and multilevel degenerative changes with the greatest at L3-L4 with mild canal stenosis and moderate left neural foraminal narrowing. (Tr. 61, 572-73). He also considered Dr. Hussain's referral of Claimant to Joseph Miller, M.D., for pain management in April of 2019. (Tr. 61, 600-13, 678-95).

In determining Claimant could perform light work with certain postural limitations, the ALJ noted Claimant's MRI of the lumbar spine from April of 2019 was interpreted to reveal no more than mild to moderate findings. He discussed the specific impressions from the MRI. (Tr. 61, 572-73). He also considered the treatment

6

recommended by Dr. Hussain, which included pain medication, muscle relaxers, and referrals for steroid injections to Dr. Miller. (Tr. 61-62, 562-64). He further relied upon Claimant's reports that the recommended steroid injections were providing some relief of her back pain. (Tr. 62, 629-30, 678-88).

The ALJ also discussed the examination findings of consultative examiner Conner Fullenwider, M.D., wherein he noted Claimant exhibited a decreased range of motion and pain in her back upon flexion and experienced pain upon extension, but her remaining range of motion findings were normal. (Tr. 62-63, 451, 454). The ALJ noted that Sherman B. Lawton, M.D., who performed a neurological examination of Claimant, reviewed Claimant's MRI of her lumbar spine and indicated that the results were "certainly not very impressive with only mild or at most moderate changes present without any evidence of nerve root compression[,] [and] [t]here was no significant canal stenosis." (Tr. 63, 645).

This Court finds no error in the ALJ's consideration of Claimant's chronic back pain. He sufficiently considered the evidence and accounted for the impairment in the RFC assessment, concluding that Claimant had the RFC to perform light work with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling.

Claimant also contends that her neuropathy in her lower extremities prevents her from performing the standing or walking

requirements of light work. The ALJ discussed the evidence regarding Claimant's neuropathy in the decision, noting that although there were findings of neuropathy throughout Dr. Hussain's treatment records, there was no evidence Claimant's condition required emergent treatment beyond her prescription medications. (Tr. 62, 395-418, 464-69, 478-95, 496-519, 525-32, 548-58, 562-70, 578-98, 629-33, 661-76). He also considered the opinions of Dr. Fullenwider, Dr. Lawton, and the state agency reviewing physicians. (Tr. 62-64).

As part of her argument that the ALJ failed to properly consider her neuropathy in the RFC, Claimant contends the ALJ improperly addressed the medical opinions of Dr. Fullenwider and Dr. Hussain. The medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must "articulate" in his decision "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations,

purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). He may not "pick and choose among medical reports, using portions of evidence favorable to [his] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v.*

*Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). If he rejects an opinion completely, the ALJ must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted). An ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Claimant specifically argues the ALJ's reasoning for finding Dr. Lawton's opinion more persuasive than Dr. Fullenwider's opinion is not supported by the evidence. The ALJ specifically considered Dr. Fullenwider's finding that Claimant exhibited decreased sensation in her hands and feet during her examination. (Tr. 62-63, 446-54). The ALJ found Dr. Lawton's opinion more persuasive than Dr. Fullenwider's opinion based upon the nerve conduction studies performed by Dr. Lawton during Claimant's consultative neurological examination. Although Claimant is correct that Dr. Lawton could not perform nerve conduction studies on Claimant's lower extremities because of edema, this was not the only reason the ALJ provided for finding Dr. Lawton's opinion more persuasive. Dr. Lawton also determined that although Claimant had some peripheral neuropathy, "clinically [it was] not particularly severe with intact knee jerks and nonorganic findings in terms of sensory examination." (Tr. 63, 647). In addition to noting Claimant's "nonorganic behavior," Dr. Lawton found evidence of "giveway-type weakness," which was incompatible with an ability to

10

walk. (Tr. 63, 646). The ALJ further found Dr. Lawton's opinion persuasive because of his specialized training and knowledge as a neurologist. (Tr. 63-64).[2]

Claimant further asserts the ALJ failed to properly consider Dr. Hussain's opinion. The various treatment records from Dr. Hussain reflected Claimant's diagnosis and treatment for hypertension, diabetes without complications, muscle spasms of the back, lumbago with sciatica/low back pain, edema, nephrolithiasis, peripheral neuropathy, osteopenia, insomnia, and muscle weakness of limb. (Tr. 61). He completed an RFC capacity questionnaire and medical source statement. (Tr. 63, 470-72, 636-41). The ALJ considered this evidence and found Dr. Hussain's opinions unpersuasive because the level of limitation found was not supported by the objective evidence of record or Claimant's reports that she benefited from recommended treatment. He further found the severity of Dr. Hussain's limitations was inconsistent with Claimant's reported activities and abilities, including her ability to attend to her own personal hygiene without assistance, assisting in caring for her pets, preparing meals, performing household chores, driving, shopping, attending church services,

---

[2]    The ALJ found the opinions of the state agency physicians as "generally supported by and consistent with the evidence appearing in the record." (Tr. 64). The state agency physicians considered Dr. Fullenwider's findings regarding Claimant's neuropathy and both determined Claimant could perform light work but was limited to only occasional climbing, balancing, stooping, kneeling, crouching, and/or crawling. (Tr. 64, 120-24, 132-36).

and managing financial matters. (Tr. 63). This Court finds that the ALJ properly considered the opinion evidence and explained why he found certain opinions persuasive or unpersuasive. He appropriately accounted for Claimant's neuropathy in the RFC.

Claimant further asserts the ALJ failed to evaluate her subjective complaints in accordance with the appropriate factors, instead comparing them to his "skewed interpretation of the medical evidence." Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ summarized Claimant's subjective complaints and considered the medical evidence. He determined her medically determinable impairments could reasonably be expected to cause her symptoms, but her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence or other evidence in the record. (Tr. 61). He determined the medical evidence depicted symptoms that were "generally no more than mild to moderate in severity," referencing the MRI of Claimant's lumbar spine and the recommended treatment of Dr. Hussain. (Tr. 61-62). The ALJ also relied upon the benefit Claimant experienced from the recommended treatment, noting the steroid injections she received from Dr. Miller resulted in pain relief and improved function of her back. Regarding Claimant's hypertension and edema, the ALJ concluded the record lacked evidence that Claimant's conditions could not be adequately treated with medication. (Tr. 62). He considered Claimant's symptoms with the opinion evidence, finding her alleged level of limitation was inconsistent with Dr. Fullenwider's and Dr. Lawton's opinions. (Tr. 62-63). He further found Claimant's symptoms were inconsistent with her reported activities and abilities. (Tr. 63). This Court finds no error in the ALJ's analysis of Claimant's subjective complaints.

Within her argument regarding her subjective symptoms, Claimant also alleges the ALJ improperly dismissed the third-party

function report completed by her husband. However, such evidence from family members is considered "evidence from nonmedical sources." *Keener v. Saul*, 2021 WL 2460614, at *3 (W.D. Okla., June 16, 2021) (quotation omitted). Under the new regulations, "[a]n ALJ is not required to articulate how [he] considered evidence from nonmedical sources[,]" but such statements are still to be considered. *Id.*, n.4 ("[C]urrent regulations continue to require the ALJ to consider 'all the relevant medical and other evidence in your case record' when formulating the RFC."). Here, the ALJ specifically considered the report completed by Claimant's husband, acknowledging his lengthy relationship and familiarity with Claimant, but finding the opinion less persuasive than the medical source opinions. (Tr. 64). This was more than the ALJ was required to do under the regulations.

The ALJ determined Claimant had the RFC to perform light work with only occasional climbing, balancing, stooping, kneeling, crouching, and/or crawling. In reaching the RFC determination, the ALJ considered Claimant's subjective complaints, the third-party statement, treatment records, and the medical opinions in the record. This Court finds no error in the ALJ's RFC determination, as it was supported by substantial evidence.

### Step-Four Determination

Claimant further asserts the ALJ improperly determined she could return to her past relevant work as a hospital cook. She

specifically argues the ALJ did not perform a proper analysis of her past relevant work as required by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), because he failed to properly account for the demands of her past work, including that she was only able to perform more strenuous lifting tasks because others helped her. Claimant maintains she cannot perform the standing and walking requirements of her past work and that her ability to perform the hospital cook position was because of an accommodation.

Step four of the sequential analysis requires the ALJ evaluate a claimant's RFC, determine the physical and mental demands of a claimant's past relevant work, and then conclude whether a claimant has the ability to meet the job demands of his past relevant work using the determined RFC. *Winfrey*, 92 F.3d at 1023. The ALJ may rely upon the testimony of the VE when making the determination of the demands of a claimant's past relevant work, but "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Id.* at 1025; *see also Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003).

At the hearing, the ALJ, the VE, and Claimant's attorney questioned Claimant regarding her past work. (Tr. 94-95, 101-03). The VE testified that according to the *Dictionary of Occupational Titles*, the hospital cook position was a skilled position at the medium exertional level, but that based upon Claimant's work

15

history report indicating that she normally lifted ten to twenty pounds, Claimant performed the job at the light level. Claimant explained that she would sometimes get help with lifting "big hams" coming out of the oven, but she agreed when asked by the VE that she normally lifted ten to twenty pounds. (Tr. 95).[3] When questioned further about whether help lifting would be an accommodation, the VE testified it depended "on how often that would occur during the day." He explained that "[i]f that's a job requirement that happened most of the day, it would be an accommodation. If it was just once or twice a day, I would say no." Claimant's attorney then asked if it would be an accommodation for her to have to have help lifting more than twenty pounds more than once or twice a day, and the VE answered that it would. (Tr. 102-03).

Based upon the hypothetical question presented to the VE, which was the RFC adopted by the ALJ, and Claimant's testimony regarding her performance of the hospital cook position, including her testimony that she sometimes had help lifting over twenty pounds, the VE testified Claimant could perform the hospital cook position as she actually performed it at the light level. (Tr. 101-02). The ALJ cited the VE's testimony with approval to support

---

[3]     Claimant indicated in her work history report that while performing the hospital cook position the heaviest amount of weight she lifted was twenty pounds and she frequently lifted ten pounds. (Tr. 344).

his findings, noting that based upon the information provided by Claimant, the VE testified Claimant performed the hospital cook position at the light exertional level. He concluded that based upon the VE's testimony and in accordance with Social Security Ruling 00-4p, Claimant could perform her past relevant work as a hospital cook as actually performed. (Tr. 64-65). This Court finds no error in the ALJ's step-four determination.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 22nd day of March, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE